UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERIN ROBINSON,<br><br>Plaintiff,<br><br>v.<br><br>FIRST-CITIZENS BANK & TRUST CO.,<br><br>Defendant. | ) | Civil No. 24-12797-LTS |

MEMORANDUM AND ORDER ON MOTION
FOR SUMMARY JUDGMENT (DOC. NO. 39)

October 9, 2026

SOROKIN, J.

In this lawsuit, Erin Robinson brings discrimination and retaliation claims against her former employer, First-Citizens Bank & Trust Company ("First Citizens"). First Citizens seeks summary judgment on all of Robinson's claims. Doc. No. 39.[1] For reasons the Court will explain, First Citizens' motion is ALLOWED.

I. FACTS

The pertinent facts are straightforward and largely undisputed. Where the parties indicate disagreement, the Court will describe their respective positions or explain why the record does not support the existence of a dispute.

Until March 2021, Robinson worked as an Executive Director at J.P. Morgan. Doc. No. 45 ¶¶ 7–8. She was laid off along with all but one other member of her team during a year-long corporate reorganization impacting her unit. Id. ¶¶ 8–9.

[1] Citations to "Doc. No. __ at __" reference items filed on the Court's electronic docket ("ECF") using document and page numbers appearing in the ECF headers or, where appropriate, paragraph numbering within the document.

In June 2021, Robinson was hired by Silicon Valley Bank ("SVB") as a Managing Director. Doc. No. 45 ¶ 5. She worked on a team of nine employees comprising SVB's "Corporate Banking Life Sciences in Technology and Healthcare Banking" division. Id. Robinson was the team's Relationship Manager. Id. ¶ 6. Unlike other units at SVB, Robinson's team included members who served relationship-management roles (i.e., client acquisition and management) and members who performed "Credit Solutions" functions (i.e., underwriting and portfolio management). Id. ¶¶ 13–16. Robinson, her manager, and one lower-ranking member of the team primarily handled relationship management. Id. ¶¶ 17, 19. The other six team members worked in Credit Solutions. Id. ¶ 20. Robinson was the second-highest-ranking team member; only her manager outranked her under SVB's title hierarchy. Id. ¶¶ 5, 10–11, 18.

Robinson took leave to care for a family member from December 9, 2022, until January 3, 2023. Id. ¶¶ 21–22. This leave was pursuant to the federal Family and Medical Leave Act ("FMLA"). In late January 2023, after her return, Robinson's manager provided feedback identifying her strengths and areas in which improvement was needed. Id. ¶ 23. The areas needing improvement each involved credit, underwriting, and corporate-finance skills. Doc. No. 40-5 at 2. The two "agreed that exploring other roles would be beneficial." Doc. No. 45 ¶ 24. Shortly thereafter, Robinson spoke with her manager and with human-resources representative Cara Jensen about taking a leave of absence for her "mental health." Id. ¶¶ 25–26.

On February 13, 2023, Robinson took such leave, invoking the FMLA and a parallel Massachusetts law (Chapter 175M of the Massachusetts General Laws, or "the PFML"). Id. ¶ 27. Her leave was set to last through the end of March 2023. Id. ¶ 29. In early March, Robinson asked Jensen "for information about a voluntary separation package." Id. ¶ 28. Not long after that, Robinson asked to extend her leave, and SVB allowed her to do so. Id. ¶ 29.

Meanwhile, a California state agency shuttered SVB on March 10, 2023. Id. ¶ 2. The Federal Deposit Insurance Corporation ("FDIC") was named its receiver and transferred its assets to a "bridge bank." Id. ¶¶ 2–3. A few weeks later, First Citizens agreed "to assume most of" the bridge bank's "deposits and loans." Id. ¶ 4. When that occurred, Robinson "became an employee of" First Citizens. Id. ¶ 30. Though on leave, she completed "onboarding paperwork" for First Citizens on April 11, 2023. Id.

In late April, Robinson sought another extension of her leave, proposing a return-to-work date of June 5. Id. ¶ 31. First Citizens allowed her request but specified that it was doing so under a "Special Leave" policy (providing forty-five days of job-protected leave to former SVB employees), explaining that Robinson had not been its employee long enough to qualify for FMLA leave.[2] Id. ¶¶ 32–34. Though this period of extended leave was set to expire on May 10, 2023, id. ¶ 35, Robinson did not then return to work. Instead, she requested—and First Citizens for a second time granted—a further extension of her leave through early September 2023, "as an accommodation under the Americans with Disabilities Act" ("ADA"). Id. ¶ 37.

During this period of Robinson's leave, the team of which she had been a member dispersed. In June 2023, Robinson's manager resigned, as did the only other team member who had served relationship-management functions. Id. ¶¶ 39–40. The other six team members, all of whom performed Credit Solutions work, were transferred to First Citizens' Corporate Banking Credit Solutions division in May and June of 2023. Id. ¶¶ 41–46. For most of them, the move was temporary; two resigned later that summer, and two more soon transferred to a different division. Id. ¶¶ 41–43, 46. By the fall of 2023, only two members of Robinson's former team

[2] Robinson takes issue with First Citizens' position in this regard, but she agrees her leave request was granted. As the Court will explain later, First Citizens was almost certainly right (and, even if it was not, the error would not change the outcome here).

remained working in the division to which First Citizens had reassigned the clients previously served by the team. Id. ¶¶ 44–45, 49, 52. Both of those employees held lower-ranking positions than Robinson's (as Directors, not Managing Directors), and both had been doing the type of work (credit and underwriting) that was needed in their new division. Id.

After Robinson's manager departed, First Citizens assigned Jack Gaziano as a "de facto" replacement. Id. ¶ 47. Gaziano was the executive-level leader of the team in First Citizens' Technology division that had received the clients, along with the two remaining underwriters, from Robinson's former SVB team. Id. ¶¶ 47–48. He discerned no need for a Relationship Manager to transition to his unit along with the team's portfolio, nor did he have any openings for Managing Directors in relationship-management roles elsewhere on his team. Id. ¶¶ 50–51.[3]

Although First Citizens had agreed she could extend her leave through early September 2023, Robinson's entitlement to leave under the PFML expired in mid-August. Id. ¶ 57. Nevertheless, First Citizens did not then demand that Robinson return to work. In late August, Robinson spoke with someone in human resources about returning to work but then asked to

[3] Robinson purports to dispute "in part" these properly supported facts. Doc. No. 45 ¶¶ 50–51. She cites her own affidavit, offered to "clarify[]" her deposition testimony, Doc. No. 45-1 ¶ 2; two pages of Gaziano's deposition, Doc. No. 45-2; and a fact included in First Citizens' statement, Doc. No. 45 ¶ 56. None of these generates a material dispute regarding the two narrow facts at issue. See Doc. No. 45-1 ¶ 6 (describing post celebrating general growth in "Tech and Healthcare Banking arms" of SVB); id. ¶ 7 (alleging "former managers" had "identified opportunities for" Robinson but not identifying those managers, describing the opportunities, or linking them to Gaziano's needs at the relevant time); id. ¶¶ 11–13 (listing job postings from two months after Robinson's termination, none of which appear to be Relationship Manager positions within Gaziano's purview, and asserting Robinson was qualified for them without establishing relevant job requirements, Robinson's qualifications, or whether positions were open at time of her termination); Doc. No. 45-2 (distinguishing between Robinson and the members of her team that remained at First Citizens); Doc. No. 45 ¶ 56 (stating need for personnel "was on the credit and underwriting side"); cf. Doc. No. 46 at 4–5 (explaining how Robinson misconstrues ¶ 56); Doc. No. 46-1 (noting several job postings Robinson identifies as transfer options were for roles that First Citizens canceled, and/or that were in "entirely different" subject-matter areas and geographic regions, and/or that were lower in rank).

extend her leave once again, through early December. Id. ¶¶ 58–59. Once again, her request was granted. Id. ¶ 59. This was her last such request and the third one First Citizens granted. Indeed, the record establishes that every time Robinson asked to take or extend a period of leave during the relevant time, her request was granted in full. Id. ¶ 67.

In October 2023, First Citizens determined it would not recreate the by-then-disbanded team of which Robinson had been a part. Id. ¶ 60. It also "decided to eliminate Robinson's position." Id. ¶ 61.[4] By December 2023, Robinson was ready to return to work. Id. ¶ 62. Her first day back, working remotely, was December 4. Id. ¶ 63. Jensen and Gaziano informed her that day that her position had been eliminated. Id. ¶ 64. Thus, Robinson was terminated on the day she returned from her repeatedly extended leave.

In all, First Citizens employed Robinson for less than nine months in 2023. She was on leave and performed no work during that period, except for completing her onboarding paperwork in April and appearing for remote work on December 4. Id. ¶ 66. Before filing this lawsuit, Robinson made no formal or informal claim of discrimination or retaliation against First Citizens in any forum. Id. ¶ 68.

When she looked for work after being terminated, Robinson admittedly focused on "managing director role[s]" in Boston, New York, Northeast Connecticut, "or Providence even." Id. ¶ 69. She sought out "relationship manager roles where [she] would be interacting with clients" without "extensive travel." Id. Though she knew of "some more junior roles" in the

[4] This is another fact Robinson disputes "in part" by citing a single paragraph in her own affidavit that in no way calls into question whether First Citizens did, in fact, reach this decision at the identified time. See Doc. No. 45 ¶ 61 (response, citing Doc. No. 45-1 ¶ 5, which concedes the team was eliminated and generally observes that First Citizens continued serving "the healthcare sector" including "two of [Robinson's] former clients"). This fact, on this record, is undisputed.

Boston area, she "couldn't justify stepping down several levels to take on a role that [she] was not really all that interested in," such as "vice president roles" that were "number crunching . . . behind the scenes" without "the relationship management piece" she preferred. Id.

Robinson sued First Citizens in Suffolk County Superior Court in October 2024. Doc. No. 1-3. She asserted four claims: disability discrimination in violation of Chapter 151B of the Massachusetts General Laws; retaliation under Chapter 151B, for complaining about discrimination; retaliation in violation of the PFML; and retaliation in violation of the FMLA. Doc. No. 1-3 at 5–6. First Citizens timely removed the case to this Court, Doc. No. 1, and answered, Doc. No. 5. Discovery ensued, culminating in the motion for summary judgment now pending. Doc. No. 39. The motion is fully briefed, Doc. Nos. 40, 44, 46, and the Court finds no further argument or motion hearing is necessary to resolve the issues presented.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party "has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v. Dynamics Rsch. Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The Court is "obliged to []view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court ignores "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (citation modified). A court may enter summary judgment "against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 158 (1st Cir. 1998) (discussing burden's return to nonmoving party "to demonstrate that a trier of fact reasonably could find in his favor").

## III. DISCUSSION

First Citizens seeks judgment in its favor on all four of Robinson's claims. In many instances, the claims raise similar questions, but the Court addresses each one in turn for clarity. None survives First Citizens' challenge.

### A. Disability Discrimination

Robinson's first claim is substantially narrower now than it was when this lawsuit began. She no longer argues that First Citizens "failed to properly engage in the interactive process" when she requested disability-based accommodations, denied her "a reasonable accommodation," or subjected her to "a hostile work environment." Doc. No. 1-3 ¶ 23; see Doc. No. 44 at 4 (disclaiming these theories). Her discrimination claim is now limited to one theory: that she was wrongfully terminated "on the basis of her disability." Doc. No. 44 at 4. Even this theory, however, finds no support in the summary-judgment record.

Claims such as Robinson's are assessed using the familiar McDonnell-Douglas burden-shifting framework. See Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005) (citing McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973)). First, Robinson must make a prima facie showing that she suffers from a disability, that she was able to perform the essential functions of her job with (or without) reasonable accommodation, and that First Citizens

terminated her at least in part because of her disability.[5] Id. If she makes such a showing, the burden moves to First Citizens "to articulate a legitimate, non-discriminatory reason for its" decision to terminate Robinson "and to produce credible evidence to show that the reason advanced was the real reason." Id. at 105. If First Citizens does so, then the burden returns to Robinson to "proffer evidence to establish" that the justification advanced "is mere pretext, cloaking discriminatory animus." Id.

Despite viewing the record in the light most favorable to Robinson, the Court concludes that no jury could find she has met the burdens she faces under the foregoing analysis. Even if she can make a prima facie showing of discrimination, the undisputed facts include powerful evidence that First Citizens had a non-discriminatory reason for eliminating Robinson's position: the effects of a post-acquisition corporate reorganization.

The bank that had employed Robinson failed and was placed in receivership. Its assets were acquired by First Citizens, which also took on at least some portion of its employees—including Robinson. In the months following these events, Robinson's manager and the only other member of her team who performed the type of work she did (relationship management, i.e., client-facing roles) resigned. The other six members of the team—all of whom performed a different type of work (underwriting and portfolio management, i.e., number-crunching roles) and were more junior than Robinson—initially transferred into the division that had assumed responsibility for the clients the team had serviced. But four of them stayed there only briefly, either transferring again to new units or leaving First Citizens completely.

[5] Though the parties quibble about the number of prima facie elements, compare Doc. No. 40 at 9–10 (listing four), with Doc. No. 44 at 5 (listing three), the Court need not linger over that question. Even if the record supports a finding that she has made the showing required of her initially—however its elements are articulated—Robinson's discrimination claim is doomed at the second and third stages of the McDonnell-Douglas test.

Throughout all of these events, Robinson was on leave. Even so, she was onboarded by First Citizens and then reassigned a new manager—Gaziano, who led the division that took on her former team's portfolio and certain of its members. The two members of her team who remained at First Citizens after the changes just described did not take on relationship-management roles, nor did they become Managing Directors. That is to say, neither of those employees was given Robinson's job. When the dust settled, First Citizens determined Robinson's former position was no longer necessary, nor was there a comparable position available in Gaziano's division. The record before the Court contains no evidence generating a dispute as to any of these facts. From these facts, a reasonable jury would be bound to conclude that First Citizens has met its burden at the second step of the McDonnell-Douglas analysis.

That brings the Court to the third step, at which Robinson bears the burden once again. Even at summary judgment, her burden in the face of the foregoing undisputed facts is a significant one. "First, [s]he must refute the clear evidence put forward by [First Citizens] showing that it was [the bank's reorganization], and not disability, that constituted the real reason for [Robinson's] termination." Tobin, 433 F.3d at 105. Then, she "must advance evidence of h[er] own showing that [First Citizens'] asserted reason was pretext hiding discrimination." Id. Robinson has done neither of these things.

She relies on the timing of her termination and the fact that others on her team were not terminated. As to timing, the record establishes First Citizens decided to eliminate her position in October 2023, about six months after it acquired SVB and became Robinson's employer, and about two months after Robinson's entitlement to leave under state law (the PFML) ended and her last request for extended leave under any law was granted. This decision was communicated to Robinson on December 4, 2023, the day she returned to work. To the extent the timing of

these events might lend some support to a prima facie showing of discrimination, it cannot overcome First Citizens' evidence showing that all relevant decisions and events arose from the internal reorganization it was undergoing during the same period. E.g., Doc. No. 45 ¶¶ 41–43, 46 (noting former members of team resigned from or transferred out of Gaziano's unit in June, July, August, and October 2023, leaving only two former team members there). In the face of that evidence, no juror could conclude that timing alone establishes pretext. See Robinson v. Town of Marshfield, 950 F.3d 21, 31 (1st Cir. 2020) (rejecting attempt to show pretext based on timing alone given intervening events).

As to the other members of Robinson's team, the record does not support a finding that they were comparators for purposes of a disparate-treatment theory of discrimination. Robinson has provided no evidence showing whether the other team members suffered from disabilities, needed or were granted accommodation, or had taken or requested disability-related leave. She has not supplied evidence concerning the circumstances surrounding their resignations from, or transfers within, First Citizens. She has done nothing to dispute First Citizens' showing that each transferred team member was moved into a position where they performed the same functions they had performed previously. She has not offered evidence challenging First Citizens' showing that each transferred team member was more junior than Robinson and was transferred to a position ranked below Robinson's. She has not shown or even argued that the transferred individuals were not qualified for their new roles, or that those roles were not in need of filling. And she has not supplied any evidence that First Citizens had available, but withheld from her, a role comparable to the one she had held and for which she was qualified.[6]

[6] Robinson's repeated assertions in her memorandum that First Citizens had "many" or "handfuls" or "an overwhelming number" or "plenty" of such positions, Doc. No. 44 at 2, 6, 8, 9, 12, are wholly unsupported, see supra, note 3, and cannot create a triable issue.

In sum, even if a jury could find Robinson has made the requisite prima facie showing, the undisputed facts would compel a conclusion that First Citizen has credibly established that it eliminated Robinson's position for a legitimate, business-related, non-discriminatory reason, and Robinson has offered nothing besides argument and speculation in response. No reasonable jury could find she has shown pretext here. First Citizens' summary-judgment motion is therefore ALLOWED as to Robinson's discrimination claim.

Much of the foregoing analysis concerning Robinson's failure to generate a material dispute of fact bearing on the third step of the McDonnell-Douglas framework applies with equal force to her retaliation claims. As appropriate, the Court will refer to this analysis but will not repeat it in its discussion of Robinson's other claims.

B. Chapter 151B Retaliation

The three remaining claims accuse First Citizens of retaliation in violation of three different laws. The first among them invokes Chapter 151B. Doc. No. 1-3 ¶ 27. Robinson suggests she "can defeat summary judgment" as to this claim "the same way she beats summary judgment in her overlying discrimination claim" under the same statute. Doc. No. 44 at 7. She is wrong, twice over.

This position presupposes Robinson's discrimination claim will proceed. It will not, for reasons the Court has explained. So, to the extent she relies on the same arguments the Court has rejected in the preceding discussion, the arguments likewise fail here.

Beyond that, Robinson ignores the limited nature of this claim. Originally, Robinson articulated her Chapter 151B retaliation claim as arising from adverse actions (including her termination) taken by First Citizens "as a result of" Robinson "complaining about" First Citizens' "unlawful disability discrimination." Doc. No. 1-3 ¶¶ 28–29. That characterization makes sense, as the elements of a Chapter 151B retaliation claim require a plaintiff to prove they

undertook some form of "protected activity" that was causally related to "an adverse employment action." Thompson v. Coca-Cola Co., 522 F.3d 168, 181 (1st Cir. 2008); see Mass. Gen. Laws ch. 151B, § 4(4). But the filing of this lawsuit was Robinson's only "complaint" concerning the discrimination she alleges occurred. Doc. No. 45 ¶ 68. Her termination (the only adverse action at issue) occurred nearly a year before she sued.

No jury could find that First Citizens terminated Robinson in retaliation for her having lodged a complaint, in any form, alleging disability discrimination. First Citizens' motion is ALLOWED as to Robinson's Chapter 151B retaliation claim.

C. PFML Retaliation

Robinson advances a second retaliation claim under a different state statute: the PFML. Doc. No. 1-3 ¶¶ 31–34 (citing Mass. Gen. Laws ch. 175M, § 1). In this claim, she alleges First Citizens terminated her employment because she had exercised her right to take time off under the PFML. Id.; see Mass. Gen. Laws ch. 175M, § 9 (prohibiting termination of employee for exercising PFML rights).

The PFML includes a provision creating a statutory presumption of retaliation in certain circumstances:

> Any negative change in the . . . status . . . of employment of an employee which occurs any time during a leave taken by an employee under this chapter, or during the 6 month period following an employee's leave . . . shall be presumed to be retaliation under this section. Such presumption shall be rebutted only by clear and convincing evidence that such employer's action was not retaliation against the employee and that the employer had sufficient independent justification for taking such action and would have in fact taken such action in the same manner and at the same time the action was taken, regardless of the employee's use of leave . . . .

Mass. Gen. Laws ch. 175M, § 9(c).

The presumption applies in this case.[7] Robinson's PFML leave ended in mid-August 2023. (Though her leave continued thereafter, it was sought and granted on different grounds.) First Citizens decided to eliminate her position that October, then terminated her employment in December. Both of those events occurred within six months of the expiration of her leave under the PFML. First Citizens' summary-judgment challenge to this claim, therefore, turns on whether the undisputed facts compel a finding that the presumption has been rebutted. Though Robinson is right that questions such as this are rarely susceptible to resolution without a trial, Doc. No. 44 at 3–4, her failure to come forward with any evidence to counter First Citizens' showing that it terminated her for non-discriminatory and non-retaliatory reasons makes this one of the rare cases that is an exception proving the rule.

As the Court has already explained, the undisputed facts establish that First Citizens eliminated Robinson's position for reasons entirely unrelated to her leave or its underlying causes. Her team had scattered, its portfolio reassigned to a division that was fully staffed as far as relationship-management work was concerned. Her two colleagues who had performed such

[7] No party has cited any cases interpreting or applying this presumption at the summary-judgment stage or in any other context, nor is the Court aware of any. Cf. Kliskey v. Making Opportunity Count, Inc., 775 F. Supp. 3d 496, 507 n.5 (D. Mass. 2025) (mentioning presumption but finding it did not apply where plaintiff had not experienced adverse action within meaning of PFML); McKeon v. Robert Reiser & Co., 770 F. Supp. 3d 351, 375(D. Mass. 2025) (granting summary judgment on retaliation claim without discussing plaintiff's reliance on presumption). Though issues arising under the PFML can often be resolved by analogizing to decisions discussing the FMLA (a statutory scheme that is more than two decades older than its state equivalent), see Doc. No. 40 at 24, that approach is not available here because the FMLA contains no parallel presumption. One might view the statutory presumption as simpler than, but analogous to, a prima facie showing under the McDonnell-Douglas framework. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–07 (1993) (treating prima facie showing as triggering presumption of discrimination that defendant can rebut by fulfilling burden of production at second stage); Soto-Feliciano v. Villa Cofresi Hotels, Inc., 779 F.3d 19, 23 (1st Cir. 2015) (same). Given the lopsided nature of the record in this case, the Court need not chart the precise contours of the presumption and the showing required to rebut it or explore whether and how the statutory standard departs from the familiar burden-shifting framework.

work alongside her had not been assigned new roles at First Citizens; they had left the company. Her underwriting colleagues, all more junior than she, had moved into new underwriting roles in other divisions where First Citizens needed people to fill such roles. By October 2023, First Citizens determined that Robinson's former team and her specific position in it were no longer necessary. The undisputed facts establish that these decisions arose independently from First Citizens' reorganization after acquiring SVB and had nothing to do with Robinson's leave. No juror could conclude otherwise on the summary-judgment record.

In this case, the presumption to which Robinson is entitled under Chapter 175M is not enough to propel her retaliation claim to trial. Her failure to marshal any meaningful response to First Citizens' proof of its lawful reasons for terminating her dooms Robinson's second retaliation claim as it did her discrimination claim discussed earlier. First Citizens' motion for summary judgment is ALLOWED as to the Chapter 175M retaliation claim.

D. FMLA Retaliation

Robinson's final claim alleges she was terminated in retaliation for invoking her right to take FMLA leave.[8] Doc. No. 1-3 ¶¶ 35–41. The record before the Court contains no evidence creating a material dispute of fact that a jury could resolve in Robinson's favor. Instead, it reveals a series of fatal flaws in this claim.

For starters, Robinson has not shown she was eligible for FMLA protections as an employee of First Citizens. She was employed by First Citizens for less than a year, virtually all of which was spent on leave. See 29 U.S.C. § 2611(2)(A) (defining "eligible employee" as one employed "by the employer with respect to whom leave is requested" for "at least [twelve]

[8] Robinson did not allege, and does not argue, that First Citizens interfered with her right to take FMLA leave. See Doc. No. 44 at 10. Indeed, the record shows she was permitted to take and extend leave every time she asked to do so.

months" and "1,250 hours of service" in twelve-month period preceding leave request). Though the record does not include the agreement pursuant to which First Citizens acquired SVB's assets, at least one other federal court has reviewed the relevant contracts and determined that First Citizens did not acquire SVB's liabilities. See Doc. No. 40 at 18–19 (discussing Leung v. Fed. Deposit Ins. Corp., No. , 2024 WL 3588015, at *1 (N.D. Cal. July 29, 2024)). Robinson musters no meaningful response on this point. See Doc. No. 44 at 10–11 (citing guidance from Department of Labor that does not address FDIC receivership or resulting transfers of bank assets and liabilities, and noting Leung involved different type of discrimination but not otherwise challenging analysis of contracts undertaken in that case). Thus, Robinson has not established a triable issue concerning her FMLA eligibility.

Even if she could clear that first hurdle, she would run headlong into another one. A plaintiff asserting FMLA retaliation must establish "a causal connection between [their] protected activity and the employer's adverse employment action." Hodgens, 144 F.3d at 161. The record contains no evidence that would permit a jury to find such a connection here, for reasons the Court has already identified. Those reasons apply even more forcefully to Robinson's federal retaliation claim, which does not afford her the presumption upon which she relied in seeking to preserve her PFML claim. Put simply, timing alone is not enough. See Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (noting "chronological proximity does not by itself establish causality" required for prima facie showing of retaliation, "particularly if the larger picture undercuts any claim of causation" (citation modified)). At least six months elapsed between Robinson's last invocation of the FMLA (April 2023) and any adverse employment action (the decision to eliminate her position in October 2023, or her actual termination in December 2023), and there were a host of relevant intervening events during that

time—including the dissolution of Robinson's former team. The record is entirely devoid of evidence suggesting anyone at First Citizens sought to punish Robinson for having taken disability-related leave. Robinson has not established a triable issue concerning causation.

And even if the record could support a finding that Robinson had made the necessary prima facie showing—and it does not—she would face a third problem. As explained already, First Citizens has supplied ample evidence of its legitimate reasons for eliminating Robinson's role and terminating her employment. This evidence is not only "legally sufficient to justify a judgment for" First Citizens, id., it is entirely unrebutted by Robinson. She "retains the ultimate burden of showing that [First Citizens'] stated reason . . . was in fact a pretext for retaliation" motivated by Robinson's protected leave, id., and she has done nothing to carry that burden here.

Accordingly, no reasonable jury, on this record, could conclude that Robinson was eligible for FMLA protections, and that her termination was causally linked to her request for FMLA leave, and that the nondiscriminatory reason for her termination identified and supported by First Citizens was pretext for retaliation. First Citizens' motion is ALLOWED as to the FMLA retaliation claim.

## IV. CONCLUSION

Because the undisputed facts establish First Citizens is entitled to judgment as a matter of law on all of Robinson's claims, the motion for summary judgment (Doc. No. 39) is ALLOWED. A separate judgment in favor of First Citizens will enter, with both parties to bear their own fees and costs.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge